## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE BENCHMARK GROUP, INC.,      :
                                 :       CIVIL ACTION

           Plaintiff,         :

                                 :

      v.                         :

                                 :

PENN TANK LINES, INC.,           :       NO.  07-2630

                                 :

           Defendant.      :

## MEMORANDUM

BUCKWALTER S. J.                                      June 11, 2008

Currently pending before the Court is the Motion of Plaintiff The Benchmark Group, Inc. ("Benchmark") for Leave to File an Amended Complaint and the Response of Defendant Penn Tank Lines, Inc. ("Penn Tank").  For the following reasons, the Court will grant the motion in part and deny it in part.

## I.       FACTUAL AND PROCEDURAL HISTORY

According to the facts set forth in the original Complaint, Plaintiff Benchmark is a financial services company that specializes in business succession and investment banking for owners of closely held businesses.  (Compl. ¶ 2.)  Defendant Penn Tank performs trucking services in twenty states, including the Commonwealth of Pennsylvania.  (Id. ¶ 4.)

In January 2006, Benchmark began to provide consulting services to Penn Tank, with the understanding that the parties were operating under the terms of a previous agreement executed in August 2002.  (Id. ¶ 9.)  Around the same time period, Penn Tank informed Benchmark that it wanted to find a potential buyer for all or a significant part of its business, which would provide

Penn Tank with liquidity, retention of some ownership, fair valuation and a solid financial partner. (Id. ¶ 10.)  Based on Penn Tank's expressed goals, Benchmark began making efforts to pursue a potential buyer, ultimately obtaining, on Penn Tank's behalf, Letters of Intent from three different private equity groups.  (Id. ¶¶ 11-12.)  First, in September 2006, Benchmark obtained an actual commitment from the Weatherly Group, LLC, confirmed in writing by a Letter of Intent dated November 12, 2006.  (Id. ¶ 13.)  The second Letter of Intent also came in November of 2006 from LINX Partners, LLC.  (Id. ¶ 15.)  The third and final letter, dated February 22, 2007, was from Crystal Ridge Partners ("Crystal Ridge").  (Id. ¶ 16.)  Up to this point, Benchmark had not been compensated or reimbursed for its expenses.  (Id. ¶ 17.)

Prior to receiving its Letter of Intent, Benchmark identified Crystal Ridge as a potential investor in November 2006 and began discussions regarding Crystal Ridge's acquisition of an ownership position in Penn Tank.  (Id. ¶ 19.)  On December 14, 2006 and February 7, 2007, Benchmark and Penn Tank met with Crystal Ridge at Penn Tank's offices to discuss Crystal Ridge's partial ownership interest.  (Id.  ¶ 21.)  At no point during these meetings did Penn Tank indicate any opposition to selling a majority share of its business or express a desire to obtain a loan instead. (Id. ¶¶ 22-23.)  Following the negotiations, Benchmark obtained from Crystal Ridge the February 2007 Letter of Intent, offering to acquire an ownership interest in Penn Tank.  (Id. ¶ 24.)

Anticipating a successful transaction, Benchmark and Penn Tank executed a new agreement reaffirming each party's responsibilities.  (Id. ¶ 26.)  This new agreement (the "Agreement"), formalized by writing dated February 23, 2007, stated that Benchmark was to provide "project leadership and strategic consulting services" to Penn Tank and "assist in the marketing, negotiations and ultimate sale of all or a significant part of Penn Tank . . . whether by sale of the stock or assets,

2

merger, consolidation, reorganization, business combination, recapitalization or otherwise." (Id. ¶ 27.)  In turn, Penn Tank agreed to retain Benchmark as its exclusive agent to render the requested services, provide Benchmark with all relevant information, advise Benchmark promptly of all contacts and proposals from prospective purchasers, use commercially reasonable efforts to cooperate with Benchmark in providing the services, provide Benchmark with access to and cooperation of company employees and agents and provide Benchmark with all financial and other information requested by it for the purpose of rendering services.  (Id. ¶ 29.)  Penn Tank further agreed to pay Benchmark a "Success Fee" for completion of Benchmark's services, which would be calculated based on the total amount of the consideration cumulatively paid and delivered in a transaction.  (Id. ¶ 31.)  Specifically, Penn Tank would pay Benchmark 2% of the total consideration for a transaction with a total consideration less than or equal to $25 million.  (Id. ¶ 32.)  For transactions with total consideration of greater than $25 million, Penn Tank would pay Benchmark $500,000, plus 5% of the total consideration in excess of $25 million.  (Id. ¶ 33.)

Benchmark met with Penn Tank on March 2, 2007, to discuss the details of the Crystal Ridge offer.  (Id. ¶¶ 36, 39.)  In addition, on March 5, 2007, Benchmark held a conference call with Penn Tank to confirm the final points to discuss with Crystal Ridge.  (Id. ¶ 42.)  As a result of the foregoing meeting and conference call, Benchmark communicated to Crystal Ridge all of Penn Tank's inquiries/comments regarding the Letter of Intent.  (Id. ¶ 44.)  In response to these comments, Crystal Ridge, among other things, increased its original offer by $1 million to cover Penn Tank's request for reimbursement of legal and due diligence fees.  (Id. ¶ 45.)  Ultimately, the Crystal Ridge offer valued Penn Tank at over $32,500,000.00 and provided for retention of some ownership and managerial control.  (Id. ¶¶ 46-47.)  By conference call on March 9, 2007, Penn Tank

informed Benchmark that the negotiated increase in total value was sufficient, but requested that the deal be delayed until after the 60th birthday of John A. McSherry, Jr., the President, Chief Executive Officer and controlling shareholder of Penn Tank.  (Id. ¶¶ 5-6, 50-51.)  In this same conference call, Penn Tank allegedly promised to compensate Benchmark even if it did not proceed with the Crystal Ridge transaction.  (Id. ¶ 52.)

On April 3, 2007, Penn Tank met with Crystal Ridge, at which time Penn Tank first expressed interest in a revised offer that would preserve the McSherry family's majority ownership position.  (Id. ¶ 54.)  During this same time period, and without informing Benchmark, Penn Tank began negotiating for a different form of liquidity.  (Id. ¶ 55.)  By letter dated April 16, 2007, Penn Tank secured an approved line of credit in the amount of $15 million from National Penn Bank to refinance existing debt, support working capital needs, partially recapitalize, provide shareholders with a cash distribution of $6 million and finance equipment purchases.  (Id. ¶ 56.)

Having secured this financing, Penn Tank, in mid-April 2007, communicated to Benchmark its refusal of Crystal Ridge's Letter of Intent.  (Id. ¶ 59.)  John A. McSherry, Jr. explained that he no longer wanted to sell a majority interest in Penn Tank.  (Id. ¶ 60.)  In response, Benchmark worked with Crystal Ridge to generate a minority deal offer.  (Id. ¶ 61.)  On April 25, 2007, Benchmark sent Penn Tank a draft Letter of Intent from Crystal Ridge outlining a revised transaction that permitted the McSherry family to retain a majority ownership position.  (Id. ¶ 62.)  Penn Tank nevertheless refused to consider this minority deal.  (Id. ¶ 63.)  On April 27, 2007, Penn Tank sent to Benchmark notification of the approved line of credit from National Penn Bank.  (Id. ¶ 64.)

Via letter dated May 16, 2007, Benchmark requested that Penn Tank pay the Success Fee, specified in the Agreement, for the Crystal Ridge transaction, which would have calculated at

4

$814,423.00.  (Id. ¶¶ 65-66.)  Penn Tank responded with an e-mail on June 4, 2007, refusing to pay this fee, and indicating that it had rejected both the Crystal Ridge majority ownership offer "for very sound reasons" and the Crystal Ridge minority ownership offer because it would be "too costly to the Company."  (Id. ¶¶ 67-68.)  Counsel for Penn Tank, in a letter written the same day, notified Benchmark that it was terminating its February 7, 2007 Agreement.  (Id. ¶ 71.)

Benchmark initiated the current action against Penn Tank in this Court on June 22, 2007.  In its initial Complaint, Benchmark set forth claims for breach of contract (Count I), quantum meruit (Count II) and promissory estoppel (Count III).  (Id. ¶¶  72-88.)  Defendant Penn Tank filed a Motion to Dismiss, which, by Order dated January 30, 2008, this Court granted as to Counts II and III, but denied as to Count I.  Benchmark v. Penn Tank Lines, Civ. A. No.  07-2630 (E.D. Pa. Jan. 30, 2008).  In the wake of this Order, Penn Tank filed its Answer on February 14, 2008.

On April 24, 2008, Plaintiff Benchmark filed the current Motion for Leave to File an Amended Complaint.  It is to this motion the Court now turns.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) sets out the standard for granting leave to amend a complaint when, as is the case here, a responsive pleading has been served:  "a party may amend the party's pleading only by leave of court or by written consent of the adverse party."  FED. R. CIV. P. 15(a).  The Rule clearly states that "leave shall be freely given when justice so requires."  Id. Nonetheless, the policy favoring liberal amendments is not unlimited.  Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir.  1990).  "The decision whether to grant or to deny a motion for leave to amend rests within the sound discretion of the district court."  Pennsylvania Employees Ben. Trust Fund v. Zeneca, Inc., 499 F.3d 239, 252 (3d Cir. 2007).  A district court may deny leave to amend a

complaint where "it is apparent from the record that (1) the moving party has demonstrated undue

delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would

prejudice the other party." Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000) (citing Foman v.

Davis, 371 U.S. 178, 182, 83 S. Ct. 227 (1962)).  The second ground, futility, means that "the

complaint, as amended, would fail to state a claim upon which relief could be granted," under the

same standard enunciated in Federal Rule of Civil Procedure 12(b)(6).  In re Burlington Coat

Factory Secs. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

## III.    DISCUSSION

Benchmark's proposed Amended Complaint makes several changes as follows:

- The Count for promissory estoppel has been dropped;

- The claim for quantum meruit, now listed as Count IV, is pleaded in the alternative to the Counts for breach of contract;

- New Count I for breach of contract alleges that Defendant breached the contract not only in failing to pay the Success Fee for Crystal Ridge, but also in

    1.    breaching the provision that Benchmark would serve as Penn Tank's "exclusive agent to render the Services";

    2.    breaching the requirement "to provide Benchmark with all relevant information";

    3.    breaching the requirement "to advise Benchmark promptly of all contracts and proposals from prospective purchasers";

    4.    breaching the requirement "to use commercially reasonable efforts to cooperate with Benchmark in its providing the Services";

    5.    breaching the requirement that all information which Penn Tank "has provided and will provide to Benchmark is accurate and complete and does not and will not misstate a material fact or omit to state a material fact necessary in order to make the statements contained therein not misleading";

    6.    breaching the requirement that "Any financial advice or opinions rendered by

6

Benchmark in connection with this Agreement or a Business Combination may not be disclosed publicly in a manner without Benchmark's prior written approval";

• New Count II alleges that, in the alternative to Count I, the loan offer from National Penn Bank constitutes a "transaction" under the parties February 2007 Agreement for which Defendant owes Plaintiff a Success Fee.

• New Count III alleges that Defendant breached the implied obligation of good faith and fair dealing by, *inter alia*:

1. failing and refusing to pay Benchmark the Success Fee called for under the parties' Agreement, or any compensation whatsoever, even though Benchmark found a ready, willing and able buyer meeting all of Penn Tank's specifications;

2. concealing from Benchmark Penn Tank's hidden interpretation of the parties' agreement, *i.e.* that Penn Tank always felt entitled to walk away from a transaction meeting all of Penn Tank's specifications, with no liability to Benchmark;

3. surreptitiously engaging in negotiations for an alternative liquidity transaction while Benchmark was expending considerable time, effort and resources under the parties' Agreement; and

4. on information and belief, using the fruits of Benchmark's work as leverage in Penn Tank's negotiations with financial institutions.

(Am. Compl. ¶¶ 72-91.)

Penn Tank does not pose any opposition to the amended Count I.  Moreover, in its Reply Brief, Benchmark concedes that its proposed Count II is futile and agrees to withdraw it. Accordingly, the Court now addresses Penn Tanks's challenges to proposed Counts III and IV.

A.    **Whether Benchmark Should Be Permitted to Plead Quantum Meruit in the Alternative**

Penn Tank objects to the proposed amendment to add a claim for quantum meruit on two grounds.  First, it contends that the motion for leave to amend this count is, in reality, an untimely motion for reconsideration of the January 30, 2008 Order.  Second, it asserts that, in any event, the

quantum meruit count is futile.  The Court agrees with both arguments.

Primarily, as argued by Penn Tank, Benchmark's request to amend its Complaint to re-add a count for quantum meruit is indeed nothing more than an effort to reinsert a claim that this Court has already deemed  meritless.  Specifically, the Court's Order of January 30, 2008 expressly held that:

> Counts II and III of Plaintiff's Complaint state claims of Quantum Meruit and Promissory Estoppel, respectively. "In Pennsylvania, 'the quasi-contractual doctrine of unjust enrichment (quantum meruit) [is] inapplicable where the relationship between the parties is founded on a written agreement or express contract.'"  Levit v. Kutcher, 28 Pa. D. & C.4th 14, 28 (Pa. Com. Pl. 1996) (quoting Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987)). Likewise, "promissory estoppel has no application when parties have entered into an enforceable agreement." Synesiou v. Designtomarket, Inc., Civ. A. No. 01-5358, 2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002) (citing Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416 (3d Cir. 1990)). In the present case, there is no dispute that the parties entered into an enforceable written agreement.

Benchmark v. Penn Tank Lines, Civ. A. No.  07-2630, 2008 WL 282694, at *1 (E.D. Pa. Jan. 30, 2008).  Local Rule of Civil Procedure 7.1 states that "[m]otions for reconsideration or reargument shall be served and filed within ten (10) days after the entry of the judgment, order, or decree concerned."  E.D. PA. RULE CIV. P. 7.1(g).  As this Court granted Penn Tank's Motion to Dismiss on January 30, 2008, and as Benchmark did not bring the present motion until April 24, 2008, its request for reconsideration is untimely.

Benchmark's argument that the proposed Amended Complaint now "make[s] clear that the quantum meruit claim . . . is pleaded in the alternative to Count I, thus curing the defect in the original Complaint," does not covert this motion into something other than a request for reconsideration.  (Pl. Mot. Leave to File Am. Compl. 5-6.)  When originally considering Penn Tank's motion to dismiss, the Court was well aware of Federal Rule of Civil Procedure 8(d), which

allows a party to plead alternative theories of recovery regardless of consistency. Fed. R. Civ. P.

8(d).  Moreover, in its opposition to Penn Tank's motion to dismiss, Benchmark expressly argued

that its quantum meruit claim was being pled in the alternative, as permitted under the Federal Rules

of Civil Procedure.  (Pl.'s Br. Opp'n. Mot. Dismiss, Aug. 3, 2007, 11-12.)  Accordingly, Penn

Tank's efforts to re-add the quantum meruit claim – albeit with the phrase "In the alternative to

Counts I, II and III" under its heading – is an unjustified and untimely request for this Court to

reconsider what it has already decided.

Even assuming *arguendo* that the current motion is properly a motion for leave to amend,

the Court deems the quantum meruit claim futile.  "Quantum meruit is a quasi-contractual remedy in

which a contract is implied-in-law under a theory of unjust enrichment;" the contract is not an actual

contract at all.  Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 998 (3d Cir. 1987).  As

this Court previously noted, it is well-established that where an express or implicit contract governs

the relationship or fixes the value of the services at issue, no recovery may be had under the

quantum meruit doctrine.  Id. at 999; see also Rahemtulla v. Hassam, 539 F. Supp.2d 755, 780

(M.D. P. 2008) ("the doctrine of unjust enrichment is inapplicable when the relationship between

the parties is founded upon written agreements, no matter how 'harsh the provisions of such

contracts may seem in the light of subsequent happenings.'") (quotations omitted).  "This is because

the essence of an unjust enrichment claim is that there is no direct relationship between the parties

under which the plaintiff may recover."  Synesiou v. DesignToMarket, Inc., Civ. A. No. 01-5358,

2002 WL 501494, at *4 (E.D. Pa. Apr. 3, 2002).

A plaintiff remains free to allege restitution as an alternative basis for relief in the event of a

breach of contract fails.  Eastland v. DuPont, Civ. A. No. 96-2312, 1996 WL 421940, at *5 (E.D.

Pa. Jul. 23, 1996).  "However, the fact that the federal rules permit alternative pleading does not mean that alternatively plead claims may not be dismissed if they fail to state a claim."  Synesiou, 2002 WL 501494, at *4.  Thus, where the validity and enforceability of a contract between the parties is not at issue, quantum meruit may not be pled as an alternative theory of relief.  Id. Compare Armstrong World Indus., Inc. v. Robert Levin Carpet Co., No. Civ. A. 98-CV-5884, 1999 WL 387329, at *7 (E.D. Pa. May 20, 1999) (dismissing an alternative unjust enrichment claim because neither party alleged that the contract was invalid or unenforceable) with Liberty Mut. Ins. Co. v. Muskin Leisure Prods., Inc., Civ. A. No. 05-253, 2006 WL 2642387, at *2 (M.D. Pa. Sep. 13, 2006) (declining to dismiss quantum meruit claim pled in the alternative where complaint alleged that theory was applicable in the event the contract was found to be unenforceable or invalid in any respect.).

In the case at bar, neither party disputes that a valid and enforceable contract exists, and at no point does either party seek recission of the contract.  Although Benchmark pleads restitution "in the event that Penn Tank is held or found to be not liable for breach of contract under the terms of the February 2007 Agreement," this allegation does not suggest that the Agreement might be deemed invalid in any respect, thus entitling Benchmark to quantum meruit recovery.  Moreover, the contract at issue expressly governs the business relationship between the parties and fully covers the work performed by Benchmark for which Benchmark now seeks payment.  Benchmark makes no allegation that the work it performed fell outside the scope of the Agreement.  Accordingly, the Court cannot now use the quantum meruit doctrine to create a quasi-contract governing circumstances already covered by an existing agreement.[1]

---

[1]  The parties take different interpretations of section 5 of the Agreement, which indicates the term of the Agreement and what is to happen in the event of termination.  (Pl. Mot. Leave to

In an effort to avoid the import of this jurisprudence, Benchmark now attempts to analogize a series of cases that permit an attorney, proceeding under a contingency fee contract, to obtain compensation pursuant to a quantum meruit theory, when the client discharges the attorney without cause prior to conclusion of the case.  (Pl. Mot. Leave to File Am. Compl. 6 (citing Mager v. Bultena, 797 A.2d 948, 956 (Pa. Super. 2002); Kenis v. Perini Corp., 682 A.2d 845, 849 (Pa. Super. 2002); Wyatt v. Silverstein, 80 Pa. D. & C.4th 494, 503 (C.P. Phila. Co. 2007)).)  While seemingly applicable, these cases are clearly limited to their context in the attorney-client setting.  Unlike standard business contracts, wherein the parties' rights of termination are negotiable, "[t]he right of a client to terminate the attorney-client relationship [under Pennsylvania law] is an implied term of every contract of employment of counsel. . . ."  Hiscott and Robinson v. King, 626 A.2d 1235, 1237 (Pa. Super. 1993); see also Novinger v. E.I. DuPont de Nemours, 809 F.2d 212, 218 (3d Cir. 1987) (citing Pennsylvania law).  Thus, "an attorney has no right to prevent a client from terminating an attorney-client relationship, and therefore, impliedly, an attorney has no right to attach a financial penalty to such a termination."  Crabtree v. Acad. Life Ins. Co., 878 F. Supp. 727, 731 (E.D. Pa. 1995), aff'd, 106 F.3d 384 (3d Cir. 1996).  "The dismissed attorney's remedy is a quantum meruit action to recover the value of services rendered."  Elliott Reihner Siedzikowski & Egan, P.C. v. Pennsylvania Employees Ben. Trust Fund, 29 Fed. Appx. 838, 841 (3d Cir. 2002).

Plaintiff has not cited, nor can this Court find, any cases that extend this principle beyond the

---

File Am. Compl., Ex. 1(A), § 5.)  For purposes of this motion, the Court need not determine what impact this provision has on Penn Tank's breach of contract action.  As to Benchmark's contention that "this provision does not purport to preclude a claim for quantum meruit in the event the Agreement is terminated prior to consummation of a 'Transaction,'" this argument is misplaced.  (Pl. Reply Br. 3.)  It is of no consequence that the contract does not preclude the operation of quantum meruit.  Our binding case law makes clear that where a valid and enforceable contract governs the relationship at issue, the quantum meruit doctrine is inapplicable.  Hershey Foods, 828 F.2d at 999,

attorney-client context.  As noted above, Benchmark, unlike an attorney, was not limited in its

ability to attach a financial penalty to Penn Tank's unreasonable termination of the contract.  In

other words, the unique nature of the attorney-client relationship does not exist between these two

commercially sophisticated parties.  The mere fact that this case involved a contingency payment

arrangement is of no moment and provides no basis for extending the attorney-client cases to such

circumstances.  See Avatar Bus. Connection, Inc. v. Uni-Marts, Inc., Civ. A. No. 04-1866, 2006 WL

1843136, at *6-7 (D.N.J. June 30, 2006) (disallowing quantum meruit theory where plaintiff entered

into brokerage agreement charging it to market defendant's business assets in return for a

commission, and where defendant restructured transaction set up by plaintiff so as to deprive

plaintiff of commission).

As Benchmark has made no effort to allege the potential invalidity or unenforceability of the

Agreement at issue, this Court will not permit the quantum meruit claim to be reinserted into this

case.  We therefore deny the motion for leave to amend on this ground.

### B.   Whether New Count III for Breach of the Covenant of Good Faith and Fair Dealing States a Claim Upon Which Relief Can Be Granted

The second disputed amendment proposed by Benchmark seeks to add a claim for breach of

the covenant of good faith and fair dealing under Pennsylvania law.  Upon consideration of the

pertinent jurisprudence, the Court again declines to permit the amendment.

"In Pennsylvania, a covenant of good faith and fair dealing is implied in every contract."

Temple Univ. Hosp., Inc. v. Group Health, Inc., Civ. A. No. 05-102, 2006 WL 146426, at *6 (E.D.

Pa. Jan. 12, 2006) (quoting Lyon Fin. Servs. v. Woodlake Imaging, LLC, Civ. A. No. 04-3334, 2005

WL 331695, at *8 (E.D. Pa. Feb. 9, 2005)).  Courts use this good faith duty as "an interpretive tool

to determine the parties' justifiable expectations in the context of a breach of contract action."

Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91-92 ((3d Cir. 2000).

"Pennsylvania law does not, however, recognize an independent claim for breach of the implied

covenant of good faith and fair dealing." Lyon, 2005 WL 331695, at *8.  Thus, a party is generally

precluded from maintaining separate claims for breach of contract and breach of the covenant of

good faith and fair dealing where both causes of action arise out of the same conduct by the

defendant.  Morgan Truck Body, LLC v. Integrated Logistics Solutions, LLC, Civ. A. No. 07-1225,

2008 WL 746827, at *5 (E.D. Pa. Mar. 20, 2008); Lyon, 2005 WL 331695, at *8; see also Bagarsra

v. Thomas Jefferson Univ., Civ A. No. 99-2321, 1999 WL 517404, at *1 (E.D. Pa. Jul. 20, 1999)

(dismissing an implied covenant claim where the plaintiff also stated a separate claim for breach of

contract).  In such a case where the allegations of bad faith essentially mirror the allegations

underlying the breach of contract, the party must proceed under the breach of contract theory.

Northview Motors, 227 F.3d at 91-92.

        In this case, both Benchmark's breach of contract claim and its implied covenant of good

faith claim are premised on the same conduct: (a) Penn Tank's surreptitious dealings to obtain

alternative liquidity while Benchmark was expending considerable time, effort and resources under

the parties' Agreement, and (b) Penn Tank's subsequent failure to compensate Benchmark for any

work it performed under the Agreement.  Pursuant to well-settled Pennsylvania law, both of these

counts cannot simultaneously exist in a single complaint.  While the covenant of good faith and fair

dealing remains a recognized principle, it "does nothing more than imply certain obligations into the

contract itself."  Meyer v. Cuna Mut. Group, Civ. A. No. 03-602, 2007 WL 2907276, at *14-15

(W.D. Pa. 2007) (quoting JHE, Inc. v. SEPTA, Civ. A. No. 1790, 2002 WL 1018941, at *5 (Phila.

C.P. May 17, 2002)).  Therefore, any claims or allegations based on that covenant are subsumed into

the underlying breach of contract action.

## IV.    CONCLUSION

In short, the Court finds that because proposed Counts II, III and IV fail to state claims upon which relief can be granted, an amendment to add them would be futile.  We thus deny the request for leave to amend to the extent it seeks to add proposed Counts II, III and IV, and grant leave to file the Amended Complaint only to the extent it modifies the Count I claim for breach of contract.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE BENCHMARK GROUP, INC., | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PENN TANK LINES, INC., | : | NO.  07-2630 |
| | : | |
| Defendant. | : | |

## ORDER

AND NOW this *11ᵗʰ* day of *June*, 2008, upon consideration of Plaintiff The Benchmark Group, Inc.'s ("Benchmark") Motion for Leave to File Amended Complaint (Doc. No. 16), Defendant Penn Tank Lines, Inc.'s Response thereto (Doc. No. 20), and Benchmark's Reply Brief (Doc. No. 21), it is hereby **ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1.  Benchmark's request to add proposed Count I is **GRANTED** and

2.  Benchmark's request to add proposed Counts II, III and IV is **DENIED**.  Allegations of breach of the implied covenant of good faith and fair dealing shall be included within the breach of contract count (Count I).

**IT IS FURTHER ORDERED** that within fifteen (15) days of the date of this Order, Plaintiff shall file a comprehensive Amended Complaint incorporating only the changes mandated by this Order.

BY THE COURT:

*s/ Ronald L. Buckwalter*

RONALD L. BUCKWALTER, S.J.